ALYCE USGAARD, appellant, v. SILVER CREST GOLF CLUB and AETNA CASUALTY and SURETY Co., appellees.

## No. 51244.

(Reported in 127 N.W.2d 636)

454

April 8, 1964.

Thomas C. Lynch, of Decorah, for appellant.

Shuttleworth & Ingersoll, of Cedar Rapids, for appellees.

THORNTON, J.—This is a workmen's compensation case.

Claimant is the widow of Peter Usgaard. Mr. Usgaard lost his life Sunday, October 22, 1961, while working in a work party making improvements on the golf course of defendant Silver Crest Golf Club. Mr. Usgaard had been a member and stockholder of the golf club since 1945. He had participated in a number of work parties during that time.

The question before the industrial commissioner was whether claimant's decedent was an employee under section 85.61(2). All references herein are to the Code of Iowa, 1958, in effect at the time of the accident. The pertinent sections are the same in the 1962 Code. The question before us is whether there is sufficient competent evidence to warrant the decision claimant's decedent was an employee and the award made. Sections 86.29 and 86.30(3) and (4).

The commissioner's findings of fact are conclusive on the courts where the facts are in dispute or reasonable minds may differ on permissible inferences to be drawn from undisputed facts. Sister Mary Benedict v. St. Mary's Corporation, 255 Iowa 847, 849, 124 N.W.2d 548, 549, and citations.

In this case claimant relies on a contract of service

implied in fact. The difference between contracts implied in fact and express is in the method of proof. A contract is express when the parties show their assent in words, implied when they show their assent by their acts. Cassaday v. DeJarnette, 251 Iowa 391, 397, 101 N.W.2d 21, 25. The import of a written contract is for the court. Here, however, the presence or absence of the elements of a contract of service is for the fact finder, the commissioner, and if there is evidence to support the findings of fact they are binding on us.

Section 85.17 provides, "Where the employer and employee have not given notice of an election to reject the terms of this chapter, every contract of hire, express or implied, shall be construed as an implied agreement between them and a part of the contract on the part of the employer to provide, secure, and pay, and on the part of the employee to accept compensation in the manner as by this chapter provided for all personal injuries sustained arising out of and in the course of the employment."

Section 85.61(2) provides, " 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified."

There is no legal distinction between the phrases in section 85.61(2), "a person who has entered into the employment of [an employer]" and "[who] works under contract of service, express or implied". Sister Mary Benedict v. St. Mary's Corporation, 255 Iowa 847, 851, 124 N.W.2d 548, 550; and Knudson v. Jackson, 191 Iowa 947, 949, 183 N.W. 391, 392. It must follow "every contract of hire" in section 85.17 has the same meaning. In the St. Mary's case, supra, at page 851 of 255 Iowa, page 550 of 124 N.W.2d, we said, "In other words, employment implies the required contract on the part of the employer to hire and on the part of the employee to perform service."

In the St. Mary's case, supra, at page 851 of 255 Iowa, page 551 of 124 N.W.2d, and Hjerleid v. State, 229 Iowa 818, 826, 827, 295 N.W. 139, 143, we pointed out the major elements of the employer-employee relationship for the purpose of our compensation Act are: (1) the employer's right of selection, or to employ at will, (2) responsibility for the payment of

wages by the employer, (3) right to discharge or terminate the relationship, (4) the right to control the work, and (5) is the party sought to be held as employer the responsible authority in charge of the work or for whose benefit the work is performed.

These elements are recognized in the authorities cited by claimant, Schreckengost v. Gospel Tabernacle, 188 Pa. Super. 652, 149 A.2d 542, 544, and California Compensation Ins. Co. v. Industrial Accident Commission, 118 Cal. App.2d 653, 258 P.2d 78. See also Riskin v. Industrial Accident Commission, 23 Cal.2d 248, 144 P.2d 16.

That the elements above set out have long been considered indicia of the employer-employee relationship under our compensation Act, see Bidwell Coal Co. v. Davidson, 187 Iowa 809, 817, 174 N.W. 592, 595, 8 A. L. R. 1058. All of the above elements are considered and we pointed out at page 817 of 187 Iowa, page 595 of 174 N.W., "The company may delegate the right to supervise the person selected, and the right to discharge him whenever his conduct imperils the safety of the miners."

In addition to the above elements there is in each of the authorities the overriding element of the intention of the parties as to the relationship they are creating. See Restatement of Agency 2d, section 220. In each of the authorities the claimant was performing services under some arrangement with the employer. In the Hjerleid and Bidwell Coal Company cases, both supra, the question was not whether the claimant was an employee, but whose employee was he. In the St. Mary's Corporation case, supra, the question was whether Sister Mary Benedict was a gratuitous employee. In Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 107 N.W.2d 102, and Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549, the question was, was claimant an employee or an independent contractor. In Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 100 N.W.2d 115, the question was "persons engaged in agriculture", section 85.1(3).

The question of importance of the elements to determine the relationship varies. See Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 348, 107 N.W.2d 102, 107.

In this case the important question, when the claim is the

services are rendered gratuitously, is (2) responsibility for the payment of wages by the employer. In short, is the man getting paid? If he is, he is an employee within section 85.61(2).

In this case we are not concerned with elements (1), (4) and (5). From the adoption of the resolution by defendant, hereinafter referred to, the commissioner could properly find defendant exercised its right of selection by selecting every member of the club. There is ample evidence the work was performed for the benefit of the club and it did control the details of the work. Also these would be the same if the services were gratuitous as contended by defendant. Our principal concern is with the sufficiency of the evidence to sustain a finding, necessarily included in the decision of the commissioner, of (2) the responsibility for the payment of wages by the employer. and, to some extent, (3) the right to discharge.

In October 1960, at the annual meeting of the membership, the club voted the following resolution, "Each membership will be asked to contribute five hours of labor, either on the course or the buildings. An alternative to the above proposal may be a $5 contribution payable at the caddy shack. A current record of these contributions, either labor or money, will be posted weekly."

If work pursuant to the above resolution without more was all we had before us, no inference of the responsibility to pay wages would be permissible. However, this resolution appears in the margin of the minute book. The secretary-treasurer of the club explained, "* * * at the meeting the exact wording was in doubt. * * *, although we knew that we wanted this idea of $5 or five hours in the minutes, and that is why the minutes have this on the side, and it was worded differently afterwards." He went on to testify the substance of the motion that was adopted was the same as appeared on the margin and the sense of the resolution was definitely a voluntary contribution. The chairman of the grounds committee, in testifying about the resolution, said, "* * * the club voted to make an assessment of $5 on each member or work one day. That was over and above your regular yearly green fees. * * * This procedure of requiring five hours of labor from a member or an additional $5 payment

was necessary because we wanted to keep the amount of the green fees down in price."

Though the secretary-treasurer also testified no record was kept and no member ever paid the $5, it was permissible for the commissioner to find as contended by claimant that her decedent either had to pay $5 or perform five hours work and therefore defendant club was required to give him a credit of $5 for his work on the day of his fatal accident. This is true because of the circumstances surrounding the adoption of the resolution, the conflict in the secretary-treasurer's testimony, and the chairman's testimony concerning the resolution. That the above constitutes a responsibility to pay wages, see Erickson v. Erickson, 250 Iowa 491, 94 N.W.2d 728; Ganzhorn v. Reep, 234 Iowa 495, 12 N.W.2d 154; Gant v. Industrial Commission, 263 Wis. 64, 56 N.W.2d 525; and Enderby v. Industrial Commission, 12 Wis.2d 91, 106 N.W.2d 315.

Evidence of the relationship the parties intended is found in the adoption of the above resolution by defendant. Concededly a purely voluntary plan had not worked. The membership decided to make a change. They decided on the above resolution. It is substantial evidence of an intention to change from a voluntary plan and to create an employer-employee relationship.

Evidence the right to discharge was modified is found in the meaning of the resolution and from the testimony of the chairman of the grounds committee. He testified:

"Q. * * *, did any member of the Silver Crest Golf Club have the authority to discharge another member, who had appeared and was working on a work party?"

An objection was overruled, the question read, and then,

"Q. Discharging him from the duties he had? A. Yes.

"Q. Terminate his services for the day? A. No, I wouldn't say that."

He also testified he would take a member unskilled in a job off of that job and he would remove a member from any job where he would endanger anyone else.

This evidence shows a modified right to discharge, but the ultimate right remains in case of danger to others. Bidwell Coal Co. v. Davidson, 187 Iowa 809, 174 N.W. 592, 8 A. L. R. 1058.

To hold this element alone would defeat claimant would run counter to section 85.18.

The evidence before the commissioner was sufficient to sustain a finding of the presence of all of the elements to be considered, particularly that defendant was responsible for the payment of wages in that it must give claimant's decedent credit on the assessment for the work performed. The fact the right to discharge was modified should not alone defeat claimant. We are aware Armitage v. Trustees of Mount Fern Methodist Episcopal Church, 33 N. J. Super. 367, 110 A.2d 154, is to the contrary. Nothing is mentioned there bearing on the ultimate right of discharge in case of danger to others.

In case of doubt the Workmen's Compensation Act is liberally construed to extend its beneficent purpose to every employee who can fairly be brought within it. Daggett v. Nebraska-Eastern Express, Inc., 252 Iowa 341, 346, 107 N.W.2d 102, 105; and Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 163, 100 N.W.2d 115, 119. Under the evidence claimant is entitled to the benefit of this rule.

Defendant cites and relies on Stiles v. Des Moines Council, Boy Scouts of America, 209 Iowa 1235, 229 N.W. 841, where we held an Eagle Scout who was injured while gentling horses in preparation for younger scouts who were to attend camp was not an employee. We there said, at page 1240 of 209 Iowa, pages 843, 844 of 229 N.W.:

"He had passed the required tests to show his qualifications to render what assistance he could to his younger brother Boy Scouts, and he voluntarily undertook to do whatever his duty as an Eagle Scout required him to do. The fact that he was to be relieved from expense while attending the camp did not, of itself, constitute remuneration for his services, nor make him a workman or employee, within the terms of the Workmen's Compensation Act. He had the choice of refusing to attend the camp, or of leaving it whenever he desired."

Claimant's decedent here had no duty to other members of the club, and if he chose not to participate in the work party he would have been subject to the $5 assessment. It is unnecessary

to further examine the Stiles case, to the extent it is in conflict with our present holding it is overruled.

For a judgment affirming the award, the case is—Reversed and remanded.

GARFIELD, C. J., and HAYS, PETERSON, SNELL and MOORE, JJ., concur.

LARSON, THOMPSON and STUART, JJ., dissent.