LAWRENCE J. YOUNT, claimant-appellee, v. UNITED FIRE & CASUALTY COMPANY, employer-insurance carrier, appellant.

No. 51356.

(Reported in 129 N.W.2d 75)

Junе 9, 1964.

Simmons, Perrine, Albright, Ellwood & Neff, of Cedar Rapids, for employer-appellant.

Clinton E. Shaeffer, of Cedar Rapids, for claimant-appellee.

Snell, J.—This is an appeal from a review-reopening decision in a Workmen's Compensation case before the industrial commissioner, affirmed by the district court, and now before us on the employer's appeal.

Prior to June 21, 1961, claimant had been employed as purchasing agent for supplies, stockman and printer by United Fire & Casualty Company. On that date he sustained a crushing injury to his right index finger in a printing press. He was X rayed and had a splint applied at a hospital. At about 11 p.m. that night because of pain he called his doctor and was re-referred to the hospital outpatient service. The following day claimant went to his doctor's office with the same complaint of severe pain. His finger was examined and considerable swelling of tissue noted. To reduce the swelling and relieve pain claimant was given an injection of proteolytic enzyme, a dosage of ½ cc of aqueous chymar.

Pursuant to the doctor's directions claimant waited in the

doctor's office 10 to 15 minutes. He then went to his car in a nearby parking lot. He felt dizzy. At claimant's request the attendant helped him back to the doctor's office. The doctor found him in a state of shock. He was extremely apprehensive, nervous, with burning sensations, a fever, and redness of tissues. His pulse was feeble, his respirations rapid and his blood pressure extremely low. Claimant was given oxygen and adrenalin and was taken to the hospital by ambulance. The doctor expressed the opinion that the shock was due directly or indirectly to the administration of chymar at the office.

On the third day of hospitalization a flaccid or relaxed condition on the right side of the claimant's face and some weakness in his right side was noticed. The doctor expressed the opinion that claimant had suffered some type of vascular accident precipitated or directly influenced by the condition of shock.

Claimant improved and returned to his former job on July 31, 1961, but in the doctor's opinion there was physical and mental impairment and disability of about 25 percent.

Claimant was paid compensation to the date of his reemployment.

Claimant was soon relieved of some of his duties and was discharged by his employer in November of 1961 for inability to do satisfactory work. He had another job for four weeks at less pay and some other occasional work.

In May 1962 claimant sought review-reopening of his claim for compensation. This sequence of hearing, decision and appeals followed.

In addition to diagnosis and treatment by his attending physician whose opinion we have noted, claimant was examined in September 1961 and again in June 1962 by Dr. Maurice Van Allen, a neurosurgeon at State University of Iowa. Doctor Van Allen found a functional and industrial disability of about 25 percent based particularly on loss of mental acuity and efficiency. He diagnosed claimant's trouble as a mild cerebral infarction or "stroke", possibly connected with the injection of proteolytic enzyme.

Dr. William E. Wallace, a neurosurgeon, examined claimant and testified for the employer. He expressed the opinion that

claimant had an allergic but not an anaphylactic reaction to the proteolytic enzyme injection. He diagnosed claimant's condition as the residual result of a previous cerebrovascular accident or "so-called stroke" not induced by the injection or any reaction thereto. It was his opinion that claimant's "stroke" merely coincided with his allergic reaction. He estimated claimant's functional disability at 10 to 15 percent.

The commissioner found the expert medical testimony to be in conflict but coupled with claimant's testimony sufficient to support a finding that there was a connecting chain of causation between treatment, shock, cerebrovascular damage and resulting disabilities.

The commissioner found specifically "That on June 21, 1961, the claimant sustained an injury to his right index finger; that as a proximate result of treatment for the finger injury the claimant suffered shock and cerebrovascular damage resulting in permanent disability to the extent of 20 percent of his body as a whole."

I. The commissioner's findings of fact are conclusive on appeal where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Section 86.30, Code of Iowa; Wagner v. Otis Radio & Electric Co., 254 Iowa 990, 993, 119 N.W.2d 751, 752. We have such a situation here. One doctor thought there was a direct connection between the treatment and the residual condition. One thought the connection possible. One thought claimant had a stroke that was coincidental but not precipitated by the treatment.

The commissioner found the showing of causation sufficient.

It is the commissioner, not the court, who weighs the evidence. His findings will be broadly and liberally construed to uphold rather than defeat his decision. Wagner v. Otis Radio & Electric Co., supra; Nicks v. Davenport Produce Co., 254 Iowa 130, 134, 115 N.W.2d 812.

II. Claimant's finger injury healed without disability. Claimant has the burden of establishing causal connection between his condition and his injury or treatment therefor. "Injury resulting from such treatment is not an independent one but is proximate to the original injury." Cross v. Hermanson

Brothers, 235 Iowa 739, 741, 16 N.W.2d 616, 617, and authorities cited therein.

III. It appeared to the commissioner that claimant had a vascular disease before his finger injury, but it had caused him no trouble.

■ If the employment injury aggravated his impaired physical condition he is entitled to compensation to the extent of that injury. Ziegler v. United States Gypsum Co., 252 Iowa 613, 620, 106 N.W.2d 591; Nicks v. Davenport Produce Co., supra, loc. cit. 135 of 254 Iowa.

■ IV. Medical testimony of a possible causal connection standing alone is insufficient. Nicks v. Davenport Produce Co., supra; Rose v. John Deere Ottumwa Works, 247 Iowa 900, 76 N.W.2d 756; Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167.

■ In the case at bar we have testimony of a possibility but also affirmative medical opinion of causal connection. The evidence was sufficient to support the commissioner's conclusion. There was testimony indicating probability or likelihood of causal relation. The commissioner accepted this version of the evidence. We may not interfere.

V. The commissioner's finding as to the extent of claimant's disability was well within the evidence and requires no discussion by us.

VI. The commissioner ordered the employer-insurance carrier to pay the following bills or reimburse claimant if he has paid them: Dr. Francis Dunn, $5.00; Paramount Pharmacy, $78.96; Dr. M. E. Van Allen, $15; John Ream, $24.10. The last item was the court reporter's fee on a transcript. The record does not set out the evidence or exhibits upon which the order was based except for the reporter's fee.

We assume a proper showing was made before the commissioner. Without some showing he could not have fixed the exact amounts. The items seem reasonable and ordinary. The amounts are small. The old maxim "De minimis non curat lex" appears applicable.

VII. The trial court in a carefully considered opinion reviewed the evidence and applicable law, sustained the award of

the commissioner and ordered judgment accordingly. We agree. The case is—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.