LESTER C. UHE et ux., appellees, v. CENTRAL STATES THEATRE CORPORATION, employer, and ST. PAUL INSURANCE COMPANIES, insurance carrier, appellants.

No. 51744.

(Reported in 139 N.W.2d 538)

JANUARY 11, 1966.

Brown, Dresser, Kinsey & Jolas, of Mason City, for appellants.

Larson & Carr, of Charles City, for appellees.

STUART, J.—The alleged employer and its insurance carrier have appealed from the trial court's judgment in a workmen's compensation case in which the decision of the industrial commissioner was reversed. We reverse the trial court.

 The question is whether the claimant was an employee under section 85.61(2) of the Code of Iowa. The deputy commissioner found he was such an employee. The commissioner on review at which additional evidence was presented found he was not an employee. "The commissioner's findings of fact are conclusive on the courts where the facts are in dispute or reasonable minds may differ on permissible inferences to be drawn from undisputed facts." Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 454, 127 N.W.2d 636, 637. The real test is the sufficiency of the evidence to support the finding. Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549.

This controversy centers around the employer's responsibility for the payment of wages to the claimant, which is one of the necessary elements in an employer-employee relationship. Usgaard v. Silver Crest Golf Club, supra. The industrial com-

missioner found claimant's services were gratuitous. We must examine the record to determine if this finding is supported by the evidence and therefore conclusive upon the courts.

■ For about seventeen years prior to 1958 claimant had been employed by Central States Theatre Corporation, hereinafter referred to as defendant, as an operator-projectionist. In February 1958 he quit to accept a better job as electrical and plumbing inspector for the City of Charles City, where he was employed at the time he sustained the injury complained of. When he quit he and his wife were given a pass, to either the drive-in or the show downtown, which he had from that time up until the accident.

For three or four years before he resigned, claimant shot off the fireworks at the drive-in on the Fourth of July. He also shot the fireworks in 1958 and 1959. On each of these occasions he received $5 for his services. In 1960 a new manager came to Charles City for defendant. Claimant shot the fireworks in 1960, 1961, 1962 and 1963 and received no compensation. In 1963 an aerial bomb exploded in claimant's hand causing the injury for which compensation is sought.

From the time of his resignation until the accident claimant had on infrequent occasions served as relief operator and electrician. He had not done any work for defendant since the summer of 1962 and was paid only $18.40 during 1962.

Defendant's responsibility to pay wages can be found only in the passes or the $5 payments which had been discontinued or both. Claimant had been given passes upon his resignation which were renewed every year. At the time he received the first passes he also was paid $5 for shooting the fireworks. With regard to the passes he had given claimant, the present manager testified:

"Q. Now did you as a matter of fact do something else as compensation for what he did? A. I don't know whether you would call it compensation, Mr. Larson, or not, I gave, offered Ted a pass for he and his wife to use throughout the year.

"* * * Q. Did you consider that that was compensation for the things he did for the theatre including the shooting of the fireworks? A. I figured that Ted had been an employee of our

Central States for years and I think it was compensation for everything Ted had done for us.

"* * * Q. Including shooting the fireworks? A. Including the shooting. In other words, it was my way of expressing my gratitude to Ted for the work that he has done for us."

Mr. Uhe, the claimant testified:

"Q. Did you receive a complimentary pass when you first left the theatre? A. Yes, sir.

"Q. And that would have been when? A. Well, in 1958, February, I think I started working for the City the 24th of February, if I remember correctly.

"Q. So you have had a complimentary pass since that time? A. Yes, sir.

"Q. Well, is it your thinking that the complimentary pass is payment for this work? A. No, I wouldn't think so."

Claimant shot the fireworks for the last manager for three years without the $5 payment which had previously been made out of petty cash. The manager never offered to pay him anything and he never asked for any wages nor sent a bill. Claimant testified:

"Q. There was no prearrangement was there, Mr. Uhe, for you to get any money for this in '60, '61, '62 and '63? Isn't that right? A. No, that is correct."

In 1963 the manager contacted claimant and wanted to know if they could "depend on me to shoot the fireworks again. I said I would.

"Q. Did you discuss with him what your wages would be? A. No. I did not, Mr.

"Q. Well, let me ask you this. Did you expect to be paid? A. Well, I did, yes, but I never asked him for it, for this reason, because my wife and I get the comp tickets to both theatres."

The industrial commissioner said: "Although the claimant testified that he figured he was entitled to money for shooting the fireworks, there is also a clear inference that he intended this to be gratuitous employment since for three years he had never contacted the theatre manager about receiving wages." We agree such inference is justified.

The evidence supports a finding the passes were given in

gratitude for past services rendered rather than as compensation for shooting off the fireworks. The first two years after his resignation he had the pass and was paid $5 out of the petty cash. Claimant's failure to ask for pay for three years when he was paid for other services supports the finding claimant gratuitously shot off the fireworks. We must therefore reverse the trial court and reinstate the decision of the industrial commissioner.—Reversed.

All JUSTICES concur.