Bertha E. **HENDERSON**, Appellant,

v.

**JENNIE EDMUNDSON HOSPITAL,** Appellee,

Aetna Casualty & Surety Co., Insurance Carrier.

No. 53965.

Supreme Court of Iowa.

June 23, 1970.

B. A. Webster, of Gamble, Riepe, Martin & Webster, Des Moines, for appellant.

Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee.

MOORE, Chief Justice.

This is an appeal from the disallowance of a claim for Workmen's Compensation. Plaintiff-claimant while cleaning a tub at defendant hospital twisted her back resulting in a ruptured disc causing permanent injury, pain and suffering which required medical and hospital care. The hospital and insurance carrier denied claimant was employed by the hospital at the time of injury and denied the injury arose out of the course of employment by the hospital.

After a hearing the deputy industrial commissioner denied the claim based on a finding claimant had failed to prove she was an employee or apprentice of the hospital at the time of injury. On review and after taking additional evidence the commissioner made similar findings and likewise denied the claim. On appeal to the district court the commissioner's action was affirmed.

Plaintiff's brief states: "The sole question to be determined on appeal is whether the plaintiff has failed to establish that she was under the employment or apprenticeship of the hospital at the time of the injury."

I. Before referring to the record we call attention to some of the applicable principles of law and to the functions of the industrial commissioner and the court in this and like cases.

Code section 86.29 in part provides: "In the absence of fraud the findings of fact made by the industrial commissioner within his powers shall be conclusive" on appeal. Section 86.30 in so far as here applicable provides any decision of the commissioner "may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * * 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision." No claim is made here of fraud

or that the commissioner acted without or in excess of his powers.

■ We have consistently construed these provisions as making the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly drawn from the facts. Such findings have the same standing as a jury verdict. Uhe v. Central States Theatre Corp., 258 Iowa 580, 581, 139 N.W.2d 538; Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 454, 127 N.W.2d 636, 637; Sister M. Benedict v. St. Mary's Corp., 255 Iowa 847, 849, 124 N.W.2d 548, 549, and citations.

In Musselman v. Central Telephone Co., 261 Iowa 352, 355, 356, 154 N.W.2d 128, 130, after stating the above rule, we say: "In cases, however, where the facts are not in dispute and different inferences could not be reasonably drawn therefrom, it becomes a question of law and the court is not bound by the commissioner's findings or conclusions.

"It is the commissioner, not the court, who weighs the evidence and his findings will be broadly and liberally construed to uphold, rather than defeat, his decision.

"Of course, a claimant has the burden of showing by a preponderance of the evidence, before the commissioner, the injury arose out of and in the course of employment.

"Our question is not whether there is sufficient evidence to warrant a decision the commissioner did not make, but rather whether there is sufficient evidence to warrant the decision he did make."

Code section 85.61(2) provides: " 'Workmen' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified."

■ There is no legal distinction between the phrases in section 85.61(2), "a person who has entered into the employment of (an employer)" and "(who) works under contract of service, express or implied". In other words, employment implies the required contract on the part of the employer to hire and on the part of the employee to perform service. Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 455, 127 N.W.2d 636, 637; Sister M. Benedict v. St. Mary's Corp., 255 Iowa 847, 850, 851, 124 N.W.2d 548, 550, and citations.

■ The factors by which to determine whether an employer-employee relationship exists are (1) the right of selection, or to employ at will (2) responsibility for the payment of wages by the employer (3) the right to discharge or terminate the relationship (4) the right to control the work, and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed. Prokop v. Frank's Plastering Co., 257 Iowa 766, 775, 133 N. W.2d 878, 883, and citations. In Nelson v. Cities Service Oil Co., 259 Iowa 1209, 1216, 146 N.W.2d 261, 265; and Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 456, 127 N.W.2d 636, 637, 638, in addition to the five above named elements we recognize the overriding element of the intention of the parties as to the relationship they are creating may also be considered.

II. With these rules in mind we go to the record for an examination of the evidence before the commissioner. In January 1965, plaintiff, Bertha E. Henderson, then age 53, was having difficulty finding a job. She saw a newspaper advertisement that Jennie Edmundson Hospital was starting their school for nurse's aids. Approximately the same time a friend told her about a job that would be coming up at the hospital as a physical therapist's aid. She went to the hospital and talked with Paul Patterson, an employee in the business office, about this job. He told her the physical therapy unit was not complete and he thought it would be a good idea if she went ahead and took the nurse's aid train-

ing and then if an aid job came up on physical therapy he would consider her. She apparently made out a job application at that time.

In response to the newspaper ad that the hospital was starting a three-week nurse's aid training course and applications were being received at the hospital plaintiff telephoned the person named in the ad, Mrs. Gittins, and was told when the class was to begin and plaintiff should bring a pencil and pad at that time. Mrs. Gittins told plaintiff there would be a $10 fee. Plaintiff testified she understood it was her tuition for the class. Any person desiring to take the course and willing to pay the $10 was accepted. The hospital did not screen the applicants. Fourteen women comprised the class in which plaintiff became a member.

The group spent the first three days in classroom training in the form of lectures by Mrs. Gittins. The trainees took notes and in the second week each started a notebook. The course was taught from a Nurse's Aid Manual designed to teach standard procedures. Each member was required to purchase a manual, a uniform consisting of blue dress, white shoes and to have a watch.

During the course the trainees were taught to make a bed to hospital regulations, the difference in the food trays with reference to the patient's diet, to make chart entries, the mechanics of admissions of patients and to make certain patients did not bring medication into the hospital. Each was further trained to wash units to the hospital standards concerning the use of disinfectants and sterilization. During the third week the trainees were in the classroom in the mornings and evenings. During the day they were carrying out what they had been taught to do. Each worked with at least one other trainee. They did not work with the regularly employed nurse's aids. Three days before completing the course plaintiff, accompanied by Geneva Larsen, while cleaning a bathtub in the hospital twisted her back with the results heretofore described.

Plaintiff's testimony on direct examination includes:

"Q. Do you contend that you started this course as an intellectual venture to better your knowledge of the world or of the hospital procedures or did you do it with the idea of obtaining employment? A. I did it with the idea of obtaining employment because I did need employment.

"Q. And during this period what do you say, as to whether or not you considered yourself a student or an apprentice. A. I believe I was a student."

Plaintiff's cross-examination includes testimony that she was not promised a job by Mr. Patterson, at no time did she sign a contract for a job or have an oral agreement she would be hired, she understood her status was to be nurse's aid trainee, she understood she would get a job if she passed the test, the hospital did not furnish any food or refreshments and she did not expect wages during the three-week training period. She admitted her deposition included: "I was studying to become a nurse's aid in preparation for a job at the hospital."

Geneva Larsen, plaintiff's classmate, testified substantially the same as plaintiff regarding taking the training and payment of a $10 fee. Her testimony includes: "There was nothing definite said as to whether we would be employed after our training, no. I don't recall that. I hoped to be employed if I completed my work satisfactorily." She stated the hospital did hire eight of the class after the course was completed and that at trial time three were still working there.

Mrs. Larsen's direct examination by plaintiff's counsel includes:

"Q. Was there a time during that three weeks that you achieved a stage where you were doing pretty much all the work that you are doing right now? A. No.

"Q. Under what respects did it differ? A. Mrs. Gittins never let us go out on the floor on our own and we were supervised either by the head nurse on the floor or she was with us."

On cross-examination Mrs. Larsen testified Mrs. Gittins made no job offer to any of the trainees, she supposed she could have gone to work at another hospital after completion of the course and she considered the whole three weeks to be schooling, even though there was work on the floor.

Mrs. Gittins testified all applicants for the training courses were accepted, she had nothing to do with the hiring of nurse's aids, the course was offered partly because of the hospital's shortage of nurse's aids, the trainees had the opportunity to seek employment elsewhere, such as in nursing homes, and that of the total of 120 completing the courses less than fifty percent had been hired by the hospital.

■ The industrial commissioner cited our Usgaard case and carefully reviewed the factors to be considered in determining whether an employer-employee relationship exists. He made findings that the second factor, payment of some compensation by the employer, had not been proved by plaintiff and that it did not appear under the entire record it was the intention of the claimant or the hospital authorities to enter into the relationship of employer-employee. These are findings of fact based on facts from which reasonable minds might differ on the inferences fairly to be drawn therefrom. Under the established principles heretofore cited these findings are conclusive on us. Plaintiff's contention that for social reasons workmen's compensation should be paid to one injured while doing an act from which another benefits without regard to their relationship is unsupported by any statutory authority.

■ III. Plaintiff argues that even if she does not meet all the tests for an "em-

ployee" she is covered as an "apprentice" under section 85.61(2).

Black's Law Dictionary, Revised Fourth Edition, defines apprentice as: "A person, usually a minor, bound in due form of law to a master, to learn from him his art, trade, or business, and to serve him during the time of his apprenticeship." For like definitions see 3A Words and Phrases p. 441 and 6 C.J.S. Apprentices § 1.

Webster's Third New International Dictionary defines apprentice as: "1a: one who is bound by indentures or by legal agreement to serve another person for a certain time with a view to learning an art or trade in consideration of instruction therein and formerly usu. of maintenance by the master b: one who is learning by practical experience under skilled workers a trade, art or calling usu. for a prescribed period of time and at a prescribed rate of pay [bricklayer] [actor's] [teacher]" The first definition reflects the medieval concept. The second expresses the modern meaning of the word.

In Gianotti, People on Information of v. Bloom, 7 Misc.2d 1077, 167 N.Y.S.2d 179, 182 (1957), after quoting the older definition of apprentice, the court says: "In ancient times, an apprentice received no remuneration or very little outside of his board and lodging. He usually lived with the master and was part of his household.

"In modern times, the apprentice works for the master for wages, usually less than that received by the journeyman who has finished his training as an apprentice. The apprentice is no less dependent upon his wages than is the journeyman."

Here there is substantial evidence to support the commissioner's finding plaintiff was not serving as an apprentice at defendant hospital. She paid a fee for instruction and training. She was not furnished board and lodging. She was not working for wages.

We hold the commissioner's findings are supported by substantial evidence and reasonable inferences drawn therefrom. The trial court's judgment is approved.

Affirmed.

All Justices concur.