Howard DeSHAW, Appellant,

v.

ENERGY MANUFACTURING COMPANY and Federated Mutual Insurance, Appellees.

No. 54118.

Supreme Court of Iowa.

Dec. 15, 1971.

Review Denied Jan. 22, 1972.

Nazette, Bromwell, Hendrickson, Marner & Humphreys, Cedar Rapids, and E. Michael Carr, Manchester, for appellant.

Shuttleworth & Ingersoll, Cedar Rapids, for appellees.

UHLENHOPP, Justice.

We must decide here whether the Iowa Deputy Industrial Commissioner properly denied a claimant additional workman's compensation in a review-reopening proceeding.

Claimant Howard DeShaw, a farmer now 56 years old, has a congenital back deformity called spondylolisthesis. The posterior arch of his fifth lumbar vertebra is not solidly attached to the body of the vertebra. A number of years ago the anterior portion slipped forward on the vertebra below. In consequence, claimant thereafter had some disability and pain from time to time. Those periods of back trouble were described by lay witnesses as spasms or strains or "throwing a disc." Claimant called them "periodic back spasms." Claimant saw various medical, osteopathic, and chiropractic physicians. In 1940 he saw a physician in Iowa City, having been referred to Dr. Steindler. Through the years, however, he was able to carry on at least some farm work and employment off the farm, subject to his periods of back difficulty.

In 1966 claimant was working for Energy Manufacturing Company ("Energy"). His work required him to drill holes in rather heavy pipe, which he had to move about. On July 20 of that year, while moving the pipe, he experienced his back trouble. He left work because of the pain in his back. He was off work for two weeks, during which he took treatments from an osteopath. Thereafter he was able to return to his job, and worked for a week. He then took a week's vacation on pay, being entitled thereto. After that he returned to his job and performed his normal work for a little over a month, until September 22, 1966. He testified that he thought if nothing else had happened, "I would have been okay."

But something else did happen. On September 22 claimant was endeavoring to change a spring-loaded belt on a polishing machine. This task required him to pull

with one hand and push with the other against the spring-load to get the taut belt off. He had another episode of his back trouble, this time severe. He described this episode as an "independent" one. He testified, "I felt another strain it felt like something struck me in the back. I left work again . . . . I doctored with Dr. Gearhart [the osteopath] after the second episode. I was on my hands and knees . . . . "

After the September 22 incident, claimant improved, but he did not stand straight and walked somewhat hunched over. Thenceforth he did not perform physical work. His son took care of the farm. From time to time he took treatments for his back, incurring expense therefor.

Subsequently, at the request of Energy's insurance carrier, claimant saw an orthopedic surgeon.

On January 3, 1967, a memorandum of agreement between claimant and Energy was filed with the Iowa Industrial Commissioner. The memorandum recited that claimant sustained a back injury while lifting pipes on July 20, 1966, and that the probable duration of the disability was unknown. Energy's insurance carrier paid claimant $56 per week for 11 weeks, plus medical expense of $126. At the end of that period the payments terminated. No memorandum was filed with respect to the September 22 incident. Nor was that occurrence mentioned in the memorandum which was in fact filed.

Still later, claimant twice slipped and had his back trouble again. One of those occasions was sufficiently serious that he "had to have adjustments for it." Neither occasion was connected with employment.

Thereafter, claimant obtained and lived on social security payments for permanent disability, together with a little income from selling insurance and his small farm.

On September 24, 1968, claimant filed an application for review-reopening under § 86.34, Code, 1971. In his application he stated that he sustained an injury on July 20, 1966, that compensation of $616 had been paid, and that the matter should be reopened. He did not allege the injury of September 22, 1966, nor apply for compensation or additional compensation on account of it.

The Iowa Deputy Industrial Commissioner ("the commissioner") held a hearing on claimant's application on February 10, 1969. Six lay witnesses testified, including claimant. One of them was Energy's general manager, who testified that when he would meet claimant on the street, claimant would seem to slow his gait and change his posture. The other five lay witnesses were offered by claimant. They testified, with varying degrees of observation, that claimant was able to perform his work before he left Energy, but that after he left he no longer worked and had a hunched posture. They did not distinguish between the injuries on July 20 and September 22 or between the amount of disability from each of those occurrences. Nor did they attempt to say that the July 20 episode bore a relation to the episode on September 22.

Two orthopedic surgeons testified, one for claimant and the other for Energy. They gave remarkably similar testimony. Both told about claimant's congenital back condition and both thought he had some disability from that condition prior to the two occurrences at Energy's plant. They believed that those occurrences increased claimant's permanent disability. Claimant's doctor did not say how much those occurrences increased such disability; Energy's medical witness opined that the occurrences increased the permanent disability 10%. Neither witness estimated separately the disability flowing from the two occurrences. They did not venture an opinion that the first injury had a causal relationship to the second one. Their opinion was that claimant has a congenital condition in his back which causes him trouble when it is aroused. They spoke of the spondylolisthesis as a "hot potato" in his back or a "sleeping dog." They thought

that claimant could still do some work, but not heavy labor.

After a hearing, the commissioner denied claimant's application to reopen. He held that claimant sustained temporary disability from the incident of July 20, 1966, for which payment was made, but not permanent disability.

Claimant appealed the case to district court, where the commissioner's decision was affirmed. Hence the present appeal by claimant to this court.

Two problems are presented by the appeal. First, since two incidents are involved, what must claimant prove in order to obtain additional compensation based on the incident of July 20, 1966? Second, is the commissioner's decision supported by sufficient competent evidence?

**I. *What Claimant Must Establish.*** If a workman already has some disability, such as from spondylolisthesis, and his disability is increased by a compensable injury, he is entitled to compensation to the extent of the increased disability, in an appropriate proceeding. Yount v. United Fire & Cas. Co., 256 Iowa 813, 129 N.W.2d 75; Olson v. Goodyear Service Stores, 255 Iowa 1112, 125 N.W.2d 251; Yeager v. Firestone Tire & Rubber Co., 253 Iowa 369, 112 N.W.2d 299; Ziegler v. United States Gypsum Co., 252 Iowa 613, 106 N.W.2d 591; 99 C.J.S. Workmen's Compensation § 181 at 608–609.

This proceeding is not an original one founded on the injury of September 22, 1966, or a proceeding to reopen an award for that injury. The present proceeding is a review-reopening of the memorandum of agreement relating to the injury of July 20, 1966. See § 86.34, Code, 1971. Section 86.34 authorizes the commissioner to reopen an uncommuted award or agreement for compensation when a workman's subsequent condition shows that inadequate or excessive compensation was allowed. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 76 N.W.2d 756. The scope of inquiry in

such a proceeding is somewhat circumscribed. An authority in this field of law states, "In a reopening proceeding, the issue before the board is sharply restricted to the question of extent of improvement or worsening of the injury on which the original award was based." 3 Larson, Workmen's Compensation Law, § 81.32 at 341 (1970).

A fundamental issue in reopening proceedings is proximate cause. As stated in Oldham v. Scofield & Welch, 222 Iowa 764, 768–769, 266 N.W. 480, 482, on rehearing, 269 N.W. 925:

> In other words, where an accident occurs to an employee in the usual course of his employment, the employer is liable for all consequences *that naturally and proximately flow from the accident.* (Italics added.)

The present case presents the complication of two injuries, one on July 20 and the other on September 22. When a workman sustains an injury, later sustains another injury, and subsequently seeks to reopen an award predicated on the first injury, he must prove one of two things: (a) that the *disability* for which he seeks additional compensation was proximately caused by the first injury, or (b) that the *second injury* (and ensuing disability) was proximately caused by the first injury. Cases of the former kind are Oldham v. Scofield & Welch, 222 Iowa 764, 266 N.W. 480, on rehearing, 269 N.W. 925 (sufficient evidence introduced to show increased disability proximately caused by original injury rather than by subsequent incidents); Langford v. Kellar Excavating & Grading, Inc., 191 N.W.2d 667 (Iowa) (evidence sufficient to show original injury was proximate cause of subsequent disability—need not be sole cause); and Keefer v. State Industrial Accident Comm'n, 171 Ore. 405, 135 P.2d 806 (additional compensation allowed for amount of increased disability which existed prior to second injury). Cases of the latter kind are Douglas v. Okmar Oil Co., 383 P.2d 681 (Okla.) (original injury not shown to be proximate cause

of subsequent incidents and ensuing disability); and McDougle v. Department of Labor & Industries, 64 Wash.2d 640, 393 P.2d 631 (original injury shown to be proximate cause of second injury and ensuing disability).

Since claimant here was injured on July 20 and again on September 22, in order for him to prevail on his application to reopen based on the July 20 injury, he had to show that the July 20 injury proximately caused the disability for which he seeks additional compensation or, failing in that proof, that the July 20 injury proximately caused the injury on September 22.

■ II. *Sufficiency of Evidence.* Claimant's difficulty is that the evidence is devoid of proof to substantiate either of the alternatives. The lay testimony and the expert testimony show that after both the July 20 and September 22 incidents had occurred, claimant had more disability than before July 20. But no witness purports to say that such increased disability resulted from the July 20 incident or to estimate what portion resulted from that injury. Moreover, no evidence was introduced that the July 20 injury brought about the September 22 injury. On the contrary, a fair inference is that the September incident, like the one in July, woke up the "sleeping dog" in claimant's back, the pre-existing spondylolisthesis.

Claimant's disability antedating July 20, from spondylolisthesis, required treatment from time to time. The commissioner could find that one of those times was the July 20 incident. After that incident, claimant took treatments and was able to work again, as in the past. No evidence was introduced that after the July 20 incident he walked with a hunch. The commissioner could find, as he did, that claimant failed to prove the July 20 incident itself caused permanent disability. But when claimant returned to work after the July 20 incident, he still had the spondylolisthesis condition in his back and he had trouble from that condition again on September 22, precipitat-

ed by the incident on that date. After that incident he walked with a hunch and did not work again.

■ The fact findings of the commissioner, like the findings of a trial court in ordinary proceedings, have the force of a jury verdict. Henderson v. Jennie Edmundson Hosp., 178 N.W.2d 429 (Iowa); Rule 334, Rules of Civil Procedure. The court has said that the commissioner's findings "will be broadly and liberally construed to uphold, rather than defeat, his decision," and that the question "is not whether there is sufficient evidence to warrant the decision the commissioner did not make, but rather whether there is sufficient evidence to warrant the decision he did make." Musselman v. Central Tel. Co., 261 Iowa 352, 356, 154 N.W.2d 128, 130.

Like the trial court, we are compelled to conclude that the commissioner's decision denying the application to reopen predicated on the July 20 injury is supported by the evidence and must stand.

Affirmed.

All Justices concur except BECKER, RAWLINGS, and REYNOLDSON, JJ., who dissent, and REES, J., who takes no part.

BECKER, Justice (dissenting).

I respectfully dissent.

I. "Our Workmen's Compensation Law is for the benefit of the working man, and should be liberally construed to that end." Irish v. McCreary Saw Mill, 175 N.W.2d 364, 368 (Iowa 1970). No principle of statutory construction is more firmly imbedded in our law than the foregoing. When a deputy industrial commissioner ignores this principle, his action should be subject to review on this rule of law as it is on any other rule of law.

Of course, we have a host of additional rules which in effect, if not in design, oper-

ate to denigrâte the cardinal principle of liberal construction:

"We have consistently construed these provisions as making the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds differ on the inferences fairly drawn from the facts. Such findings have the same standing as a jury verdict. Uhe v. Central States Theatre Corp., 258 Iowa 580, 581, 139 N.W.2d 538; Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 454, 127 N.W.2d 636, 637; Sister M. Benedict v. St. Mary's Corp., 255 Iowa 847, 849, 124 N.W.2d 548, 549, and citations.

"In Musselman v. Central Telephone Co., 261 Iowa 352, 355, 356, 154 N.W.2d 128, 130, after stating the above rule, we say: 'In cases, however, where the facts are not in dispute and different inferences could not be reasonably drawn therefrom, it becomes a question of law and the court is not bound by the commissioner's findings or conclusions.

" 'It is the commissioner, not the court, who weighs the evidence and his findings will be broadly and liberally construed to uphold, rather than defeat, his decision.

" 'Of course, a claimant has the burden of showing by preponderance of the evidence, before the commissioner, the injury arose out of and in the course of employment.

" 'Our question is not whether there is sufficient evidence to warrant a decision the commissioner did not make, but rather whether there is sufficient evidence to warrant the decision he did make.' " (loc. cit. Henderson v. Jennie Edmundson Hospital, 178 N.W.2d 429, 431).

All of these rules are necessary and proper in their place. However, when their restrictive use operates to defeat the cardinal principle of liberal construction they should take second place.

II. Claimant is pilloried on the following strict restrictive interpretation of the plead-

ings and evidence. He had work-connected incidents or injuries on two occasions. The first occurred on July 20, 1966 and the second September 22, 1966. Claimant did not file on the second incident but tried to amend his claim during trial before the deputy commissioner. The commissioner refused to allow amendment and in his opinion confined himself entirely to the sequelae growing out of the July 20 incident. I believe he erred prejudicially on both counts.

Clearly the employer's representatives knew of the September 22 injury. DeShaw testified he quit because of the injury. On November 5 employer's manager was told claimant had a back injury. The employer's insurance carrier requested an examination by Dr. Huey of claimant some time shortly before December 8, 1966. This was after the second injury and before the employee filed the outdated Form No. 4, Iowa Memorandum of Agreement to Compensation.

The temporary total disability had ceased long before September 22, 1966. There was no need for medical examination except in connection with a new injury. When the doctor, on behalf of the employer, took the medical history he was told of the second injury or incident and included it in his evaluation.

The Form No. 4 was (1) on an old form, long outdated and entirely lacking in the essential elements of a proper memorandum of agreement (see form required as of November 18, 1963, Iowa Departmental Rules, 1971, page 406), (2) required to be filed within thirty days after payment of weekly compensation is begun (it was thus some 4½ months late). Nevertheless the commissioner approved on January 6, 1967.

No Form No. 5 was filed. The commissioner's own rules state:

"This report is to be signed by the employee when compensation is terminated or interrupted, and is to be filed with the industrial commissioner by the employer of insurance carrier, as the closing supplement to Form No. 4."

Form No. 5 requires the employer's receipt, it shows when disability is claimed (or admitted) to have begun, when it is claimed (or admitted) to have ceased, and whether there is any permanent partial disability claimed.

Thus there never was any final settlement approved by the Industrial Commissioner under this record. The Form No. 4 approval could only go to admission of the injury and weekly amount to be paid. It contains no information as to how long the payment continued or was to continue or as to the duration of the temporary total disability or the amount, if any, of the permanent partial disability. (All subject to being shown on Form No. 5 which was never filed.)

It is the mandatory duty of the employer to supply such information. It is the duty of the Industrial Commissioner to see that this is done. Iowa Code, 1971, §§ 86.11, 86.12, and 86.8. Cf. Iowa Departmental Rules, page 503 et seq.

Prior rulings by the Industrial Commissioner should have been considered by his deputy. In Hines v. Raskin Packing Company, et al, found in Twenty-Ninth Biennial Report, Iowa Industrial Commissioner, p. 97, opinion dated October 2, 1969, the Commissioner had this to say:

"There is another matter in this case which is of grave concern to the Commissioner. The claimant's injury occurred on February 24, 1968, he suffered disability within a few days and was paid weekly compensation by the employer's insurance carrier. However, the First Report of Injury was not filed with the Industrial Commissioner until November 4, 1968 and a Memorandum of Agreement and Form No. 5 Receipt have never been filed. Section 86.11 of the Code requires an employer to file a First Report of Injury with the Industrial Commissioner within 48 hours after notice or knowledge of an injury which temporarily disables an employee for more than 7 days or results in permanent disability or death.

The form of this report is prescribed by the Commissioner's rule 1.1(1).

"* * *.

"The employer was aware of the claimant's injury and disability and paid medical bills and weekly compensation. However, the employer's representative failed to file a Memorandum of Agreement and Form 5 Receipt at all and waited many months before filing a First Report. It is a reasonable assumption that such failure is willful and the employer must pay a penalty of $50 for each of the three reports it failed to timely file. Because the employer failed to file a Memorandum of Agreement, the employee was required to have an Arbitration hearing before a Deputy under Section 86.14 and a Review hearing in Des Moines before the Commissioner under 86.24.

"This has meant a delay of over three months and has required the Industrial Commissioner to devote many hours to this decision and the lawyers of both the employee and the employer to travel from Sioux City to Des Moines. The employer's failure to obey the workmen's compensation statute and the Industrial Commissioner's rules makes a mockery of the Supreme Court's charge that procedures under this law should be speedy. If the employer does not voluntarily remit to the Industrial Commissioner on behalf of the State of Iowa, the matter will be presented on complaint to the Woodbury County Attorney."

Yet in this case the 4½ months' delay in filing report of injury was ignored; failure to file a proper Form No. 4 was ignored and failure to file any Form No. 5 was also ignored.

The $50 fine in the foregoing case is but one form of sanction. Of more importance in this case, the claimant should not be held unable to show what actually happened when the employer's dereliction resulted in the Commissioner's failure to review the matter in the first place.

Claimant should have been allowed to amend to claim disability for the second injury as well as for the first. Any statute of limitations involved should have been deemed tolled for failure on part of the employer to do its duty under the statute.

This position has hereto been firmly postured by the Industrial Commissioner himself in Skinner v. Pittsburgh-Des Moines Steel Company, filed December 21, 1966, a proceeding in review-reopening brought under §§ 86.34 and 86.35 of the Iowa Workmen's Compensation Act for personal injuries sustained on *January 16, 1961*. The Commissioner said:

"Although the claimant had been paid weekly compensation in Iowa for the 1961 injury on the basis of 20 per cent loss of use of his body, there had never been a formal determination of his disability. The Memorandum of Agreement did not refer to permanent disability and states a weekly compensation rate only for temporary disability and healing period and not permanent disability. The Form No. 5 Receipt showing the weekly compensation paid is not signed by the employee so as to indicate his acquiescence and agreement that he had 20 per cent permanent partial disability. Under the circumstances, to conclude either as a matter of law or fact, that the claimant had agreed to the estimate of permanent disability resulting from his 1961 injury, would be wrong. In view of the lack of any support in the record for the carrier's payments based on 20 per cent permanent disability, we feel free to proceed to make our finding based upon the evidence of record."

The purpose of the Act is to see that the injured claimant is compensated swiftly, fairly and with the least possible "red tape". Cross v. Hermanson Bros., 235 Iowa 739, 16 N.W.2d 616. On the narrow issue of the deputy commissioner's failure to consider the second injury what we said in Coghlan v. Quinn Wire & Iron Works, 164 N.W.2d 848, 850, 852 (Iowa 1969), seems pertinent:

" 'An application for arbitration is not a formal pleading and is not to be judged by the technical rules of pleading. Nor is the same conformity of proof to allegation necessary as in ordinary actions. (Citations).' Yeager v. Firestone Tire & Rubber Co., 253 Iowa 369, 373–374, 112 N.W.2d 299, 301–302; Alm v. Morris Barick Cattle Co., 240 Iowa 1174, 1177, 38 N.W.2d 161, 163. The same is true of an application for review-reopening. * * *

"In an action of this kind in which formal pleadings are not required and which has as a goal 'rough justice—speedy, summary, informal and untechnical' Cross v. Hermanson Bros., 235 Iowa at 472, 16 N.W.2d at 618, proof of a causal connection between a known condition and an industrial accident discovered after the statute of limitations would have run, but while an application for review-reopening is pending, is properly admissible under such application."

If surprise were claimed a continuance could have been granted. Of course surprise is negated in this case because both doctors, constituting all medical evidence, had made the examinations on behalf of and at the request of the employer. They knew of the second injury. It would be strange indeed if the employer did not know what the doctors it had retained were about to say.

Thus the core issue is the Commissioner's failure to consider all of the evidence properly presented to him. If the second injury or incident is considered, the evidence is overwhelming that there was a permanent partial disability growing out of work-connected incidents to some extent. There is no evidence to the contrary. As pointed out both doctors were company hired experts that claimant elected to use. Further, the medical bills for all treatments, including those related by the doctors to have emanated from the second incident were

assumed by the employer. The only real question here was the extent of disability. It must have been quite surprising to all parties when recovery was entirely denied by the deputy commissioner who heard the case.

III. There is another facet to the majority opinion that must be discussed. The majority holds:

> " * * * When a workman sustains an injury, later sustains another injury, and subsequently seeks to reopen an award predicated on the first injury, he must prove one of two things: (a) that the *disability* for which he seeks additional compensation was proximately caused by the first injury, or (b) that the *second injury* (and ensuing disability) was proximately caused by the first injury. * *."

There is a third situation, totally ignored by the majority. If both injuries are work connected they are concurrent industrial causes and the total injury is compensable. The principle is crystal cleàr when the problem of apportionment from two injuries arises. If there are two industrial accidents involving either (1) two separate employers, or (2) the same employer but two separate insurance carriers, the problem is not whether claimant can recover for his full provable disability (*this is assumed*), but rather whether there should be an apportionment and for how much. Cf. II Larson's Workmen's Compensation, §§ 59.-10, 59.20.

The general rule is found at I Larson's Workmen's Compensation, § 13.00:

> "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

The same assumption that the employee must be fully compensated underlies the whole theory of second injury funds adopted by so many states.

There are legitimate problems in allocation between various parties who are by law responsible for part of the disability. But where responsibility for both injuries is on one party (employer here) the doctrine of difficulty of allocation of percentage or amount of causation to the total result is completely misplaced.

One should not abandon this subject without comparing the rule here adopted in this Workmen's Compensation case with our rule in tort cases. In Treanor v. B. P. E. Leasing, Inc., 158 N.W.2d 4, 6 (Iowa 1968), we said:

> " * * * The better rule is that, where two or more persons acting independently are guilty of consecutive acts of negligence, causing damage to another under circumstances where the damage is indivisible, the negligent actors are jointly and severally liable. Of course, those acts that are remote or have no reasonable connection with the injury or damages claimed must be excluded. In case of doubt, here again the finder of fact must be afforded an opportunity to decide whether the consecutive acts of negligence are reasonably related to the damage alleged. * * *."

We recognize the doctrine of indivisible and inseparable results of multiple injuries in tort cases but refuse to recognize it in Workmen's Compensation cases. Even where the injuries were received while working for the same employer! Even though the whole theory of the legislation is to assure the worker some compensation; albeit, a smaller amount.

I do not urge that the severability doctrine for tort cases should be wholly adopted for Workmen's Compensation cases. This would be inappropriate where the separate injuries grow out of *non-work-connected injuries*. But where the injuries are all work connected and especially where the

employer is the same, the doctrine of inseparability should surely apply.

I would reverse and remand to the Industrial Commissioner for further proceedings.

RAWLINGS, and REYNOLDSON, JJ., join in this dissent.