**Mark GAFFNEY, Appellant,**

v.

**DEPARTMENT OF EMPLOYMENT SERVICES; Division of Job Service; Seamans Trucking, Inc.; Charles W. Seamans, Inc.; and Mike Oswald d/b/a Oswald Trucking, Appellees.**

No. 94–1485.

Supreme Court of Iowa.

Nov. 22, 1995.

Van T. Tran, Legal Services Corp., Waterloo, for appellant.

Joseph L. Bervid, Iowa Department of Employment Services, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This is an appeal by petitioner Mark Gaffney from a district court ruling that upheld a division of employment services decision denying him unemployment benefits. The agency's denial rested on a finding that Gaffney was an independent contractor, not an employee. Because we conclude the agency applied the wrong legal standard, we reverse and remand for a new ruling on the record already made.

## I. *Background Facts and Proceedings.*

In January 1990, Gaffney pursued a job opening as a truck driver for three interrelated businesses: Seamans Trucking, Inc.; Charles W. Seamans, Inc. (CWS); and Oswald Trucking, Inc. Seamans specializes in short grain hauling to the Mississippi River from local elevators and farmers. CWS specializes in hauling hazardous materials. Kathy Seamans holds all the corporate offices of both corporations, and she and her husband are the corporations' sole shareholders. Their son-in-law, Mike Oswald, owns Oswald Trucking, Inc. Seamans owns truck trailers, but no tractors. Oswald owns and leases truck tractors, using Seamans' shop facilities as its home base.

The nature of Gaffney's relationship with these entities is at the heart of this controversy. Gaffney claims his status was unclear to him from the start, and that Kathy Seamans only explained the compensation and nature of the work. Seamans maintains she told Gaffney that Seamans Trucking, Inc. did not have drivers but only "leased on" trucks with drivers. In any event, Gaffney signed two leases, one agreeing to lease *from* Oswald a truck tractor, and one with Seamans purporting to lease *to it* a truck tractor and driver. The first two paragraphs of each lease pertinently provided:

> THE BASIC INTENT OF THIS WRITTEN AGREEMENT IS TO CLEARLY ESTABLISH *LESSOR IS A SELF–EMPLOYED INDEPENDENT CONTRACTOR AND NOT AN EMPLOYEE OF LESSEE* ....
> LESSOR AGREES TO INDEMNIFY AND HOLD LESSEE HARMLESS FOR LOSS RESULTING FROM INJURY, SICKNESS OR DEATH SUSTAINED BY LESSOR, HIS/HER EMPLOYEES, HELPERS, OR MEMBERS OF HIS IMMEDIATE FAMILY, FRIENDS, OR GUESTS, IN CONNECTION WITH ALL MATTERS INCIDENTAL TO THIS CONTRACT, INCLUDING PAYMENT BY LESSEE OR LESSEE'S INSURANCE COMPANY, OF ANY TYPE OF EMPLOYEE BENEFITS i.e., WORKERS' COMPENSATION, SOCIAL SECURITY, *UNEMPLOYMENT BENEFITS,* HOSPITALIZATION BENEFITS, ETC.

(Emphasis added.)

Gaffney hauled for Seamans and CWS from July 1990 until July 1992. Under the lease agreements, Seamans paid Gaffney twenty-five percent of the gross revenue for each load. Seamans then made a payment to Oswald Trucking for the lease of the tractor, and kept the balance as payment for the use of its trailer. No sums were ever withheld from Gaffney's checks for taxes, insurance, or benefits. Gaffney paid self-employment taxes for the years in question.

The business relationship between the parties terminated in July 1992 when Gaffney's truck was seriously damaged. After the accident, Oswald was unable to secure financing to provide a new truck. Gaffney found new employment one week later. When he became separated from that new employer in January 1993, he filed a claim for unemployment benefits. Gaffney was then advised that Seamans and Oswald had not contributed to the unemployment compensation fund.

A job service representative denied Gaffney's subsequent claim for omitted wage credits, finding Gaffney was an independent contractor, not an employee. On Gaffney's appeal, an administrative law judge (ALJ) affirmed that decision. The ruling was likewise upheld by the district court on judicial review. Further facts will be detailed as they pertain to the arguments presented on appeal.

## II. *Issues on Appeal and Scope of Review.*

Gaffney claims on appeal that the ALJ's decision, affirmed on judicial review, ignored the administrative rules defining the employment relationship. *See* 345 Iowa Admin.Code §§ 3.19(1)–(7). Instead, he claims, the ALJ applied an erroneous standard drawn from a workers' compensation case, *Henderson v. Jennie Edmundson Hospital,* 178 N.W.2d 429, 431 (Iowa 1970). Gaffney further argues that, when the proper standard is applied, the record supports the finding that he was an employee, not an independent contractor, and thus entitled to job service benefits.

On appeal from judgment entered on judicial review of agency action, our review is limited to the correction of errors at law. *Connolly Bros. Masonry v. Department of Employment Serv.*, 507 N.W.2d 709, 710 (Iowa App.1993). We are not bound by an agency's interpretation of pertinent statutes. *Ellis v. Department of Job Serv.*, 285 N.W.2d 153, 156 (Iowa 1979). We are, however, bound by the agency's fact findings that are supported by substantial evidence in the record. *Id.* An agency decision is supported by substantial evidence if a reasonable person, viewing the record as a whole, would accept it as adequate to reach a conclusion. *Id.* The fact that two inconsistent conclusions may be drawn from the same evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Id.*

III. *Analysis.*

A. Preliminarily we must address Gaffney's claim that his failure to read and understand the lease prevents him from being bound by its terms. The contention is without merit. This court recently held "[i]t is well settled that failure to read a contract before signing it will not invalidate the contract. Absent fraud or mistake, ignorance of a written contract's contents will not negate its effect." *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993) (citations omitted).

B. Merely signing such an agreement, however, is not determinative of a worker's status. Iowa law establishes definite factors by which to determine whether a worker is an employee or an independent contractor.

"Employment" for unemployment compensation eligibility purposes is defined by statute as:

[S]ervice, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied. Employment also means any ... service performed after December 31, 1977, by:

. . . .

(2) Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee.

Iowa Code § 96.19(18)(a) (1995). Factors further defining the employment relationship are set forth in 345 Iowa Administrative Code section 3.19(1)–(7). Stated briefly, the factors tending to show an employer-employee relationship include: (1) the employer's right to control and direct the performance of the service; (2) the right to terminate the relationship without penalty; (3) that the tools, equipment, and place to work are furnished by the employer; and (4) proof of fixed wages computed on a weekly or hourly basis. 345 Iowa Admin.Code §§ 3.19(1)–(4). By contrast, factors tending to show independent contractor status include: (1) proof that an individual is subject to the control or direction of another merely as to the result of the work and not as to the means and methods for accomplishing the result; (2) discharge or termination will constitute a breach of contract with potential damages; (3) the work involves performance of a specific job or piecework at a fixed price; (4) proof of a distinct trade, occupation, business, or professional service offered to the public who seeks the benefit of that training or experience; and (5) the right to employ assistants with the exclusive right to supervise their activity and completely delegate their work. *Id.*

The administrative regulations also set forth two caveats to these general tests:

1. Whether the relationship of employer and employee exists under the usual common law rules will in doubtful cases be determined upon an examination of the particular facts of each case; and

2. If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial.

*Id.* §§ 3.19(5)–(6).

C. Despite this guidance, two lines of cases have developed regarding the correct standard to apply in determining whether a worker is an employee or an independent contractor.

In the unemployment compensation context, it is well settled that the right to control the manner and means of performance is the principal test in determining whether a worker is an employee or independent contractor. *Connolly*, 507 N.W.2d at 711; *Meredith Publishing Co. v. Iowa Employment Sec. Comm'n*, 232 Iowa 666, 672, 6 N.W.2d 6, 10 (1942); *Moorman Mfg. Co. v. Iowa Unemployment Compensation Comm'n*, 230 Iowa 123, 137, 296 N.W. 791, 797–98 (1941). This test derives from the common law conception of the employment relationship. *Meredith*, 232 Iowa at 678–79, 6 N.W.2d at 13. Although the cases do not name 345 Iowa Administrative Code section 3.19 directly, they apply essentially the same factors. *See Connolly*, 507 N.W.2d at 711; *Meredith*, 232 Iowa at 671, 6 N.W.2d at 9–10; *Moorman*, 230 Iowa at 136, 296 N.W. at 797. While each case must be considered on its merits, and a variety of factors are important, the right to control the manner in which work is performed is held to be "the single and universally applicable test by which ... servants are distinguished from independent contractors." *Meredith*, 232 Iowa at 673, 6 N.W.2d at 10.

A second line of cases, arising in the workers' compensation context, holds that the intent of the parties is conclusive in determining whether an employment relationship exists. *Rouse v. State*, 369 N.W.2d 811, 814 (Iowa 1985); *Henderson*, 178 N.W.2d at 431; *Nelson v. Cities Serv. Oil Co.*, 259 Iowa 1209, 1216, 146 N.W.2d 261, 265 (1967); *Usgaard v. Silver Crest Golf Club*, 256 Iowa 453, 456, 127 N.W.2d 636, 638 (1964).

In *Henderson*, the court listed five factors to be used in determining whether an employment relationship exists:

> (1) the right of selection, or to employ at will (2) responsibility for the payment of wages by the employer (3) the right to discharge or terminate the relationship (4) the right to control the work, and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed.

178 N.W.2d at 431. The court went on to state, however, that "in addition to the five above named elements we recognize the overriding element of the intention of the parties as to the relationship they are creating may also be considered." *Id.*

In reaching its conclusion that intent is the "overriding element," the court in *Henderson* cited *Nelson* and *Usgaard*. *Id.* Closer inspection reveals, however, that those two cases do not support that holding. In *Usgaard*, the court relied on the Restatement (Second) of Agency, section 220, to establish the intent of the parties as the "overriding" factor. 256 Iowa at 456, 127 N.W.2d at 638. The Restatement, however, merely lists the parties' intentions as *one* of several factors. *See* Restatement (Second) of Agency § 220. Moreover, as noted in *Nelson*, a comment to section 220 provides that " '[i]t is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other.' " 259 Iowa at 1216, 146 N.W.2d at 265 (quoting Restatement (Second) of Agency § 220 cmt. m). We think it also noteworthy that *Henderson* and *Usgaard* did not involve the precise question of whether an individual was an employee or an independent contractor, but whether an individual was an employee at all. *See Henderson*, 178 N.W.2d at 430; *Usgaard*, 256 Iowa at 454, 127 N.W.2d at 636–37. In *Nelson*, where the court did consider the issue of whether an individual was an employee or an independent contractor, the court cautioned that exclusive reliance on the parties' intent could be misleading. 259 Iowa at 1216, 146 N.W.2d at 265.

D. Turning to the case before us, we note that the ALJ recognized the definition of "employment" found at Iowa Code section 96.19(18)(a), the factors of 345 Iowa Administrative Code section 3.19, and the five-factor *Henderson* employment test. With little further discussion, however, he concluded that although the factors aid in analysis, "the intent of the parties is the overriding element in determining whether an employment contract existed." Focusing on the plain language of the lease agreements, he found that there was substantial evidence of Gaffney's independent contractor status.

We conclude the ALJ erred in relying on an "intent of the parties" standard to the exclusion of the factors listed in 345 Iowa Administrative Code section 3.19. Exclusive reliance on such a standard appears questionable in the workers' compensation context, but is definitely misapplied in the unemployment benefits context. *See Louismet v. Bielema*, 457 N.W.2d 10, 12 (Iowa App.1990) (right to control, not written designation of status, is principal factor in distinguishing employee from independent contractor). The error requires us to remand the case to the agency for a new ruling, on the record already made, applying the correct legal standard. We do not intend, by this reversal, to intimate any view on the merits of the controversy.

**REVERSED AND REMANDED WITH DIRECTIONS.**