Charles ROBBINS, Appellant,

v.

IOWA DEPARTMENT OF INSPEC-
TIONS AND APPEALS and Heri-
tage Acres, Appellees.

No. 96–321.

Supreme Court of Iowa.

July 23, 1997.

Kenneth F. Dolezal of Dolezal, Lindeman & Davison, Cedar Rapids, for appellant.

Melissa Weets Anderson and Jay Andrews of Bradley & Riley, P.C., Cedar Rapids, for appellee Heritage Acres.

Thomas J. Miller, Attorney General, and Jean M. Davis, Assistant Attorney General, for appellee Iowa Department of Inspections and Appeals.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

A nursing home resident who challenged his involuntary discharge from a care facility appeals the district court order upholding an administrative review of his discharge. We affirm.

Plaintiff Charles Robbins, in his late fifties at the time of these proceedings, suffers from multiple sclerosis and blindness. He has also been diagnosed as having a personality disorder, perhaps organic in origin, featuring explosive and aggressive outbursts. For seventeen years he resided at Heritage Acres, an intermediate care facility in Cedar Rapids,

Iowa. Robbins is a Title XIX[1] and Medicare recipient.

The record reveals that during Robbins' last three months at Heritage Acres he became physically aggressive and verbally abusive toward several other residents. The staff's long-time ability to redirect his aggression became less and less effective. Nursing and social service records from August through October 1994 document twenty-three such incidents.

After Robbins physically assaulted another wheelchair-bound patient, he was referred for evaluation (apparently voluntarily) to the psychiatric ward of a local hospital. While there, Heritage Acres notified him that he would be discharged from its facility in thirty days. The notice apprised Robbins of his right to appeal the decision. A social worker personally discussed the notice, as well as transfer options, with Robbins. .

An administrative law judge (ALJ) from the department of inspections and appeals heard Robbins' appeal from the involuntary discharge notice. Both Robbins and the facility were represented by counsel. At issue was whether the discharge was warranted and whether the notice of discharge complied with Iowa Administrative Code rule 481—58.40. The facility offered the testimony of its director of nursing, social worker, and staff members. All testified to Robbins' aggressive behavior toward other residents and lack of cooperation with staff charged with moving him safely between his bed and wheelchair using a mechanical lift. Members of Robbins' family, as well as Robbins himself, testified to the hardship a transfer to another facility would create because it would prevent them from visiting with Robbins regularly, by phone and in person.

The ALJ, affirmed on appeal by the director of the department of inspections and appeals, found that Robbins had run his wheelchair into other residents, restrained their freedom of movement, and directed abusive language at both residents and staff

members. These hostile actions, concluded the ALJ, justified Robbins' discharge based on the health, safety, and emotional welfare of the other residents. The department also determined that Heritage Acres properly notified Robbins of his involuntary discharge from the facility, finding him to be the "responsible party" for notification, as contemplated in Iowa Administrative Code rule 481—58.40(1). The department's decision was affirmed by the district court on judicial review. *See* Iowa Code § 135C.13 (1995); § 17A.19. This appeal by Robbins followed.

On appeal Robbins challenges the department's interpretation of Iowa Code chapter 135C and associated administrative regulations. First, he claims the record is insufficient as a matter of law to justify involuntary discharge from Heritage Acres. Second, he contests his status as a "responsible party" for purposes of receiving the discharge notification.

■ Our review is limited to the correction of errors at law. *Gaffney v. Department of Employment Servs.*, 540 N.W.2d 430, 433 (Iowa 1995). We are bound by the agency's factual findings that are supported by substantial evidence in the record, but we accord only limited deference to the agency's interpretation of pertinent statutes. *Id.; Staceyville Community Nursing Home v. Department of Inspections & Appeals*, 528 N.W.2d 557, 559 (Iowa 1995).

## I. *Statutory and Regulatory Framework.*

Safeguards against improper discharge or transfer of patients from health care facilities, grounded in federal law, are provided by Iowa statute and administrative regulation. Iowa Code chapter 135C charges the department of inspections and appeals with the duty to "enforce rules setting minimum standards for health care facilities." Iowa Code § 135C.14. This includes promulgating "policies and procedures regarding the treatment, care, and rights of residents." *Id.*

---

1. "Title XIX of the federal social security Act grants medical assistance to state programs for 'families with dependent children and [the] aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of

necessary medical services....' 42 U.S.C.A. § 1396 (West Supp.1995)." *Manor of Lake City, Inc. v. Hinners*, 548 N.W.2d 573, 575 (Iowa 1996).

§ 135C.14(8). Iowa Code section 135C.14(8)(b) states that the department shall adopt rules relating to

[t]he involuntary discharge or transfer of residents from a facility including provisions for notice and agency hearings and for the development of a patient discharge or transfer plan and for providing counseling services to a patient being discharged or transferred.

■ Pertinent to this appeal, section 135C.14(8) directs that the rules shall encompass the resident's rights provisions contained in 42 C.F.R. section 483.12 (1989). With regard to notice of transfer or discharge, this federal regulation prohibits discharge *unless* the following standards are met: the safety or health of individuals in the facility is endangered; a thirty-day notice has been delivered to the resident prior to discharge and to a family member or legal representative, if known; the notice contains the reason for discharge, right of appeal information, date and location of the discharge, and contact information for the care ombudsperson and responsible agency; and the facility prepares and orients the resident to be discharged to ensure safe and orderly transition. 42 C.F.R. § 483.12(a). In sum, the federal framework for an involuntary discharge or transfer requires a five-part showing: cause, notice, agency hearing, plan development, and counseling.

Iowa Administrative Code rule 481—58.40, governing involuntary discharge or transfer from an intermediate care facility, either meets or exceeds the requirements set forth in 42 C.F.R. section 483.12. The administrative regulation states in pertinent part:

**481—58.40(135C) Involuntary discharge or transfer.**

58.40(1) A facility shall not involuntarily discharge or transfer a resident from a facility except: For medical reasons; for the resident's welfare or that of other residents. . . .

. . . .

*c.* Involuntary transfer or discharge of a resident from a facility shall be preceded by a written notice to the resident or responsible party at least thirty days in advance of the proposed transfer or discharge. . . .

*d.* The notice required by paragraph "*c*" shall contain all of the following information:

(1) The stated reason for the proposed transfer or discharge.

(2) The effective date of the proposed transfer or discharge.

(3) A statement [of the resident's right to appeal the facility's decision to transfer or discharge to the department of inspections and appeals].

. . . .

*f.* [Notice of the hearing] shall be sent by certified mail or delivered in person to the licensee, resident, responsible party [and ombudsperson]. . . .

. . . .

*i.* A copy of the notice required by paragraph "*c*" shall be personally delivered to the resident and a copy placed in the resident's record. A copy shall also be transmitted to the department, the resident's responsible party, physician, the person or agency responsible for the resident's placement, maintenance, and care in the facility, and the department of elder affairs long-term care ombudsman.

. . . .

*l.* The involuntary transfer or discharge shall be discussed with the resident, the resident's responsible party, and the person or agency responsible for the resident's placement, maintenance, and care in the facility within forty-eight (48) hours after notice of discharge has been received. . . .

*m.* The resident shall receive counseling services before (by the sending facility) and after (by the receiving facility) the involuntary transfer to minimize the possible adverse effects of the involuntary transfer. Counseling shall be documented in the resident's record.

(1) Counseling shall be provided by a qualified individual [*e.g.*, degree or experience in social work]. . . .

(2) The facility shall develop a plan to provide for the orderly and safe transfer

or discharge of each resident to be discharged or transferred.

Iowa Admin. Code r. 481—58.40(1).

## II. *Robbins' Challenges on Appeal.*

■ A. *Cause.* Robbins asserts the record is insufficient to support his discharge in accordance with the regulatory framework just described. The claim is without merit, legally or factually.

Iowa Code section 135C.23 sets the requirements for admission or residence in a health care facility. The statute provides:

> A health care facility shall not knowingly admit *or retain* a resident:
>
> a. Who is dangerous to the resident or other residents.
>
> . . . .
>
> c. Whose condition or conduct is such that the resident would be unduly disturbing to other residents.

Iowa Code § 135C.23(2) (emphasis added). Moreover, a health care facility must "transfer or discharge a resident with dangerous or disturbing behavior when the [facility] cannot control the resident's dangerous or disturbing behavior." *Id.*

Complimenting these statutory mandates, Iowa Administrative Code rule 481—58.40(1) prohibits involuntary discharge or transfer from a facility except for "the resident's welfare or that of other residents." The administrative code defines "welfare" as follows:

> "Welfare" of a resident or that of other residents refers to their social, emotional, or physical well-being. A resident might be transferred or discharged because his/her behavior poses a continuing threat to himself/herself (e.g., suicidal) or to the well-being of other residents or staff (e.g. his/her behavior is incompatible with their needs and rights). . . .

Iowa Admin. Code r. 481—58.40(1)(b).

The ALJ, affirmed by the department director, found Robbins ran his wheelchair into other residents, restrained their freedom of movement, and directed abusive language toward them, all of which infringed upon the rights and well-being of other residents. We are bound by these findings, as they are substantially supported by the record. *See*

*Gaffney,* 540 N.W.2d at 433. The sworn testimony of Heritage Acres staff members recounted Robbins' recent and recurring episodes of pushing tray tables and carts into other residents, intimidating them, and even striking an elderly female resident with his fist. Given this behavior, Robbins cannot escape the department's legal conclusion under Iowa Code section 135C.23(2)(c) that his aggressive acts were "unduly disturbing to other residents." According to the administrative regulations, his behavior was clearly incompatible with the safety of other residents whom he accosted as they passed through the facility's common areas. Moreover, the facility was hampered in its ability to ensure Robbins' safety where his aggressive noncompliance with staff prevented the proper use of a mechanical lift for transfer from his wheelchair to his bed. *See* Iowa Code § 135C.23(2)(a); Iowa Admin. Code r. 481—58.40(1). Clearly Robbins' discharge was warranted under this record, and the district court correctly upheld the department's conclusions on this ground.

■ B. *Notice.* Next, in a somewhat puzzling challenge, Robbins contests the sufficiency of his notice of discharge, claiming Heritage Acres failed to notify his "responsible party." The term "responsible party" is defined by administrative rule:

> *"Responsible party"* means the person who signs or cosigns the admission agreement required in 58.13(135C) or the resident's guardian or conservator if one has been appointed. In the event that a resident has neither a guardian, conservator nor person who signed or cosigned the resident's admission agreement, the term "responsible party" shall include the resident's sponsoring agency, e.g., the department of social services, Veteran's Administration, religions [sic] groups, fraternal organizations, or foundations that assume responsibility and advocate for their client patients and pay for their health care.

Iowa Admin. Code r. 481—58.1(19).

The record reveals that Robbins signed his own admission agreement without a cosigner, pays his own bills, and does his own banking. No guardian or conservator has been ap-

pointed for him, nor does the record disclose the need for one. Robbins offered no evidence that an agency, group, or organization has assumed responsibility for him. Thus the ALJ and district court both found that Robbins is his own responsible party for purposes of receiving notice.

Robbins nevertheless asserts that three subparagraphs in administrative rule 481—58.40(1) require notification of a responsible party in addition to the resident. Specifically, he points to rule 58.40(1)(f), which requires that notice of the discharge hearing shall be sent to the "licensee, *resident, responsible party,* and ... ombudsman." (Emphasis added.) Likewise, under rule 58.40(1)(i), a copy of the notice must be personally delivered to the *resident* and other copies sent to the "department, *the resident's responsible party,* physician, the person or agency responsible for the resident's placement, maintenance, and care in the facility, and the ... ombudsman." (Emphasis added.) Finally, under rule 58.40(1)(l), the resident's discharge must be discussed with "the *resident, the resident's responsible party,* and the person or agency responsible for the resident's placement, maintenance, and care in the facility." (Emphasis added.)

Robbins' argument that these three rules required notification beyond what Heritage Acres provided fails for two reasons. First, the general notice provision of rule 481—58.40(1)(c) contemplates alternative service to the resident *or* responsible party, not both. There is no dispute that Robbins, the resident, received notification. Thus the general rule's requirement was not only met, but exceeded, because Robbins' sister and son were also notified. *See State v. Stradt,* 556 N.W.2d 149, 151 (Iowa 1996) (statutory provisions read, not in isolation, but in conformity with overall statutory scheme).

Second, the subparagraphs on which Robbins relies are ancillary to the general notice requirement in 58.40(1)(c) and would apply here if there were a responsible party to notify. Robbins, however, has failed to identify who that "responsible party" would be. As aptly noted by the district court, "[o]ne would think if the party was responsible, the party would also be readily identifiable."

Although Robbins' counsel hints on appeal that Robbins was perhaps incompetent to receive notice of his discharge, the record furnishes no support for such a claim. The transcript reveals that Robbins was engaged in the proceedings and fully understood their import. In the absence of a finding of incompetence under Iowa Code section 229.27, an individual hospitalized or detained for treatment of mental illness is not presumed incompetent. Iowa Code § 4.1(15)(1995); *see id.* § 4.1(21A)(1997).

### III. *Conclusion.*

Ample evidence in the record supports the department's finding, affirmed on judicial review, that Heritage Acres had cause to discharge Robbins under Iowa Code chapter 135C and Iowa Administrative Code rule 481—58.40(1). Compliance with the applicable notice requirements for involuntary discharge was also established. We thus affirm the judgment of the district court.

**AFFIRMED.**