# IN THE COURT OF APPEALS OF IOWA

No. 3-1114 / 13-0609
Filed April 16, 2014

**STARK CONSTRUCTION and**
**CHARLES STARK,**
    Petitioners-Appellees,

**vs.**

**JOHN LAUTERWASSER,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

A workers' compensation claimant appeals a judicial review order reversing the agency's decision that he was an employee and not an independent contractor. **REVERSED AND REMANDED.**

Thomas M. Wertz and Daniel J. Anderson of Wertz & Dake, Cedar Rapids, for appellant.

Matthew G. Novak of Pickens, Barnes & Abernathy, Cedar Rapids, for appellees.

Heard by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

We must decide if the workers' compensation commissioner properly concluded an injured carpenter was working as an employee of a construction company and therefore was eligible for benefits. Because substantial evidence supports the commissioner's fact findings, and his application of the law to those facts was not "irrational, illogical, or wholly unjustifiable," we reverse the district court and remand for determination of the remaining issues.

I.    **Background Facts and Proceedings**

John Lauterwasser has been a carpenter for more than two decades. For many years he was a full-time employee of Don Risdahl Builders and performed work for his own company, J.B. Construction, on weekends. In 2009, the flow of projects coming into Risdahl Builders slowed down. So in May of that year, Lauterwasser started doing carpentry work for Stark Construction, a company owned by Charles Stark.

Lauterwasser was working for Stark at the Bloomsbury Farms in Atkins on September 18, 2009, when his saw kicked back and his left index and middle fingers ran across the blade. Stark and co-worker Ben Schafer rushed Lauterwasser to the hospital where he underwent surgery to repair tendon damage.

Lauterwasser provided information to the hospital that he was employed by Don Risdahl Builders and was self-insured. On a September 21, 2009 follow-up visit to the doctor, Lauterwasser said he was not covered by workers' compensation insurance and was the person responsible for the medical billing.

Lauterwasser participated in physical therapy until December 9, 2009, when he asked to be released because of the lack of insurance. Lauterwasser returned to his work with Stark in late 2009.

When Lauterwasser filed his 2009 taxes he reported the $20,423 in pay he received from Stark as income for his subcontractor business. Lauterwasser also received $13,293 in wages from Risdahl Builders in 2009.

On May 7, 2010, Lauterwasser filed a claim for benefits under the workers' compensation act, claiming he was Stark's employee on the date of his injury. On June 18, 2010, Stark filed an answer denying Lauterwasser was ever an employee of his construction company and seeking dismissal of the claim.

A deputy workers' compensation commissioner held a hearing on Lauterwasser's claim on May 11, 2011. The deputy heard from Lauterwasser, Stark, Schafer, and Roger Nelson, who also did construction work with Stark. The deputy issued his arbitration decision on July 12, 2011, concluding Lauterwasser failed to prove he was an employee as that term is defined in Iowa Code section 85.61(11) (2009). The deputy relied on the "common business practice in the Benton and Linn County areas" where a carpenter would contract with a client and then bring other carpenters on as "subcontractors" to complete the job.

Lauterwasser appealed the deputy's decision to the commissioner, arguing "overwhelming evidence supports a finding that claimant is an employee of Stark and not an independent contractor." The commissioner agreed with Lauterwasser, observing: "All of the men who testified at the hearing—including

claimant and Stark—appear to have consistently engaged in or been the victim of worker misclassification." The commissioner issued the final agency order on August 14, 2012, reversing the arbitration decision and awarding Lauterwasser permanent partial disability benefits, healing period benefits, and medical expenses. Stark sought judicial review.

On March 29, 2013, the district court reversed the final agency action. The court elevated the "intent of the parties" over all other considerations relevant to determining whether a claimant qualifies as an employee under chapter 85. The court reasoned:

> The Commissioner found the parties and witnesses intended to work for one another as sub-contractors with the intent to circumvent workers' compensation laws. The Court cannot find any evidence, whether by testimony or documentation, that supports the Commissioner's decision. Both the deputy and Commissioner applied the same facts to the correct legal authorities. However, the Commissioner's determination that the parties' intent should not, be considered because they intended to evade workers' compensation law is not supported by any evidence in the record. This lack of evidence leads the court to conclude the Commissioner's conclusion was illogical . . . .

Lauterwasser now appeals from the judicial review order.

## II.     Standard of Review

Judicial review of agency action is governed by Iowa Code section 17A.19(10). We will apply administrative law standards to see if we reach the same result as the district court. *Burton v. Hilltop Care Center*, 813 N.W.2d 250, 255–56 (Iowa 2012). The particular standard of review depends on the aspect of the agency's decision challenged in the petition for judicial review. *Id.* at 256.

Stark's petition for judicial review challenged the commissioner's definition of "employee." When a substantive term within the special expertise of the agency is being interpreted, the agency is vested with the power to interpret that provision. *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 14 (Iowa 2010). The legislature did not delegate any interpretative authority to the commissioner to interpret the definition of "employee" in chapter 85. *Staff Mgmt. v. Jimenez*, 839 N.W.2d 640, 648 (Iowa 2013). Therefore, neither the district court nor our court on appeal is required to defer to the commissioner's interpretation of the term "employee." We may substitute our own judgment if the commissioner improperly defined that term. *See Renda*, 784 N.W.2d at 14-15.

Stark's petition for judicial review also challenged the commissioner's findings of fact. Because the commissioner's factual determinations are "clearly vested by a provision of law in the discretion of the agency," both the district court and our court on appeal give deference to the commissioner's factual determinations if they are based on substantial evidence, viewing the record as a whole. *See Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 850 (Iowa 2009). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1); *Thorson*, 763 N.W.2d at 850. The question is not whether the evidence supports a different finding, but whether the evidence supports the finding actually made. *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 218 (Iowa 2006).

Finally, Stark's petition for judicial review challenged the commissioner's application of the law to the facts. Courts will not reverse that application unless it is "irrational, illogical, or wholly unjustifiable." *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012).

On appeal, Lauterwasser contends the district court erred in determining the intent of the parties was a controlling factor in defining who is an employee. He also argues the district court "did not properly apply 'substantial evidence' review and improperly substituted the court's judgment for that of the agency." Finally, Lauterwasser asserts the district court erred in deciding the commissioner's application of the law to the facts was illogical. If our application of the chapter 17A standards noted above yields the same conclusions as the district court, we affirm; if we reach different conclusions, we reverse. *See Democko v. Iowa Dep't of Natural Res.*, 840 N.W.2d 281, 286 (Iowa 2013).

## III.   Analysis

We start by discussing the definition of "employee" in chapter 85, as well as the multi-factor tests adopted by our courts to differentiate between employees and independent contractors. We then turn to the question whether the record contained substantial evidence to support the agency's fact finding. Finally, we determine whether the agency's application of the law on employee-employer relationships to Lauterwasser's circumstances was irrational, illogical or wholly unjustifiable.

### A. The Governing Law

The workers' compensation act provides coverage for "all personal injuries sustained by an employee arising out of and in the course of the employment." Iowa Code § 85.3(1); *Meyer*, 710 N.W.2d at 220. The act defines an employee as "a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer . . . ." Iowa Code § 85.61(11). The act also lists certain people who do not meet this broad definition, including independent contractors. *See id.* § 85.61(11)(c)(2). In construing these legislative definitions, our courts have indulged a "measure of liberality" and "doubt as to whether a claimant was an employee or independent contractor is resolved in favor of the former status." *See Daggett v. Nebraska-Eastern Exp., Inc.*, 107 N.W.2d 102, 105 (Iowa 1961); *see also Usgaard v. Silver Crest Golf Club*, 127 N.W.2d 636, 639 (Iowa 1964) (noting act is "liberally construed to extend its beneficent purpose to every employee who can fairly be brought within it"). Furthermore, the workers' compensation statute is "intended to cast upon the industry in which the worker is employed a share of the burden resulting from industrial accidents." *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 506 (Iowa 1981) (explaining theory that ultimate cost is born by the consumer as the cost of the production).

Initially, Lauterwasser, as claimant, must establish that at the time of his injury he was rendering services for Stark. *See Everts v. Jorgensen*, 289 N.W. 11, 13 (Iowa 1939). The burden then shifts to Stark to prove Lauterwasser was an independent contractor and not an employee. *Daggett*, 107 N.W.2d at 106.

Stark testified he had a verbal agreement with Lauterwasser that if he needed work, Stark would hire him as a subcontractor at an agreed-on hourly rate. The name chosen by the parties to describe their relationship is not conclusive. Practitioners in workers' compensation law recognize misclassification can occur: "In an attempt to avoid the cost of providing protection to their workers, employers have historically tried to establish an independent contractor relationship for their workers." 15 James R. Lawyer, Iowa Practice Series, Workers' Compensation § 3:1, at 19 [hereinafter Lawyer]; *see also* 3 Larson's Workers' Compensation Law § 63.01, at 63-3 [hereinafter Larson] (quoting General Accounting Office study estimating "15% of all employers misclassify 3.4 million workers as independent contractors annually"). A close look at the underlying relationship is necessary to properly determine whether Lauterwasser was an employee or an independent contractor. *See* 15 Lawyer, § 3:1, at 19.

### 1. Multi-factor tests

When the issue is an individual's status as an employee versus an independent contractor, many factors are relevant. *See Nelson v. Cities Serv. Oil Co.*, 146 N.W.2d 261, 265 (Iowa 1966). In determining the existence of an employer-employee relationship, the *Nelson* court pointed to the following five factors:

> (1) the right of selection, or to employ at will, (2) responsibility for payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) the right to control the work, and (5) the identity of the employer as the authority in charge of the work or for whose benefit it is performed.

*Id.*

The *Nelson* court described an independent contractor as "one who carries on an independent business and contracts to do a piece of work according to his own methods, subject to the employer's control only as to results" and endorsed the following eight-factor test:

> (1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or of his distinct calling; (3) his employment of assistants, with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies, and materials; (5) his right to control the progress of the work, except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

Id. at 264–65.

## 2.    The parties' intent

The *Nelson* court also called attention to "another possible element which, when applicable, might be used with others as an aid in determining whether one person is or is not the employee of another, to-wit:  the intention of the parties as to the relationship created or existing."  *Id.* at 265.  The *Nelson* court warned that looking at intent "standing alone" could be "somewhat misleading."  *Id.*  The court then quoted comment m, under section 220 of the Restatement (Second) of Agency, which explained:

> It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other.  However, community custom in thinking that a kind of service, such as household service, is rendered by servants, is of importance.

*Id. Nelson* stated the trier of fact may, where appropriate, use the subjective standard of the parties' intent "to the extent it serves to shed light upon the true status of the parties concerned." *Id.*

Our supreme court discussed the parties' intention again in *Henderson v. Jennie Edmundson Hospital*, 178 N.W.2d 429 (Iowa 1970). There, the court said "in addition to the five . . . elements we recognize the overriding element of the intention of the parties as to the relationship they are creating may also be considered." *Henderson*, 178 N.W.2d at 431. *Henderson* cited *Nelson* and *Usgaard* as supporting that conclusion. *Id.*

"With [those] rules in mind," the *Henderson* court focused on the commissioner's finding that the second factor—payment of some compensation by the employer—had not been proved by Henderson, who was injured while enrolled in a nurse's aide training course for which she did not receive any wages. *Id.* at 431–33. The court also noted: "[I]t did not appear under the entire record it was the intention of the claimant or the hospital authorities to enter into the relationship of employer-employee." *Id.* at 433.

In an appeal involving unemployment benefits, the supreme court discussed workers' compensation cases appearing to hold "the intent of the parties is conclusive in determining whether an employment relationship exists." *Gaffney v. Dep't of Emp't Servs.*, 540 N.W.2d 430, 434 (Iowa 1995) (reviewing *Nelson* and *Usgaard*). Justice Neuman opined: "Closer inspection reveals, however, that those two cases do not support that holding." *Id.* The *Gaffney* court suggested the parties' intent remained just one of several factors to be

considered, and primarily only to settle the question whether the would-be employee has submitted to the control of the would-be employer. *Id.*

Finally, we address the concept of evasive intent. In its ruling, the commissioner suggested the case law provided the following: "Where both parties by agreement state they intend to form an independent contractor relationship, their stated intent is ignored if the agreement exists to avoid workers' compensation laws." The district court similarly stated: "If both parties intend to form a sub-contractor relationship for the purpose of avoiding workers compensation laws, that intent is ignored and the standard rests on the five factors." We are unable to find this principle expressly stated in Iowa case law. This concept does appear in a treatise examining when the contractual designation of an independent contractor relationship may be disregarded: "If the attempt to contract to specify a particular legal relationship is found to be designated as an evasion of the Worker's Compensation Act, it will of course be disregarded." 3 Larson, § 61.05, at 61-8. The treatise further states: "But, even without the imputation of such an evasive intent, the contractual designation of the relationship as employment or contractorship may be so plainly and completely at odds with the undisputed facts that the contractual designation must be disregarded." *Id.*

### 3.     Community custom

Community custom may be considered in determining if "a kind of service, such as household service" is provided by employees. *Nelson*, 146 N.W.2d at 265. But community custom only matters if a question exists as to which party

controlled the work. *See Burr v. Apex Concrete Co.*, 242 N.W.2d 272, 276 (Iowa 1976) (examining custom at construction site in a borrowed servant context).

The Restatement (Second) of Agency, cited in *Nelson*, looked to community custom to find an employee relationship even when there was an absence of control by the employer. *See* Restatement (Second) of Agency, § 220, cmt. m, illus. 11 (1958) ("A household servant working under an agreement where his employer will not interfere with the servant's conduct is an employee where community custom regards people engaged in household service as employees"). Neither *Nelson* nor the Restatement Second suggests community custom should act as a counterweight when there exists a clear finding the employer controlled the work.

### 4. Legal standards identified by the agency and district court

With the governing statutes and case law on employee-employer relationships in mind, we now turn to the question whether the agency properly interpreted that law. Lauterwasser's argument on appeal presents another layer, namely whether the district court missed the mark in its articulation of the legal tests.

The district court concluded the agency used the correct legal standard; it was the application of that standard to the facts that the district court dubbed as illogical. In challenging the judicial review order, Lauterwasser argues the district court skewed the legal test for determining who qualifies as an employee. He asserts the court erred in viewing the parties' intent as the controlling factor. We agree with Lauterwasser's assertion.

The district court placed a burden upon Lauterwasser "to show the facts meet the five-prong test *and* that the parties intended for his relationship with Stark to be an employment relationship." That description of the burden misinterprets the governing law. The parties' intent to establish an employee-employer relationship is not a mandatory factor that must be established by the claimant. The subjective standard of the parties' intent *may* be considered by the trier of fact "to the extent it serves to shed light upon the true status of the parties concerned." *Nelson*, 146 N.W.2d at 265.

But the most important consideration in determining if a person is an employee or independent contractor is "the right to control the physical conduct of the person giving service. *Id.* "If the right to control, the right to determine, the mode and manner of accomplishing a particular result is vested in the person giving service [that person] is an independent contractor, if it is vested in the employer, such person is an employee." *Id.* (quoting *Schlotter v. Leudt*, 123 N.W.2d 434, 436 (Iowa 1963)(internal quotations omitted)). Only if that control is debatable, does the trier of fact need to consider the parties' intention or community customs. *See id.*

We conclude the commissioner recognized the proper factors to consider when determining an employee for compensation purposes. We likewise conclude the district court improperly elevated the intention of the parties as the factor that "looms over all other considerations." The district court's misstatement of the legal test impacted its conclusion concerning the application of the law to the facts.

**B. Factual Findings**

We next consider whether substantial evidence supports the agency's findings of fact relevant to the employment relationship.

The deputy and the commissioner agreed on most of the pertinent facts. For instance, Stark paid Lauterwasser wages of thirty dollars an hour for his carpentry work. Stark kept track of hours Lauterwasser worked and paid him at the end of every week. Lauterwasser would sometimes bring his adult son to assist on the job, and Stark would provide Lauterwasser wages to pay his son. Stark told Lauterwasser what job to go to each day. Lauterwasser could not change the way the work was to be performed. Stark set the time the work was to be completed. Stark had the ability to fire Lauterwasser or reprimand him. Stark controlled the contracts with the customers, as well as the beginning and end of the work day and what the next project would be. All the responsibility for quality of the work fell to Stark. Stark ordered supplies needed for the project. Lauterwasser brought basic tools to work, but Stark would provide some of the more specialized tools.

Lauterwasser also had his own carpentry business, J.B. Construction. Before working for Stark, Lauterwasser was employed by Don Risdahl Builders. In that job, Lauterwasser received a W-2 statement showing his earnings. Lauterwasser testified he knew the difference between receiving a W-2 statement and a 1099 form. In 2008, Lauterwasser earned $30,562.00 from his employment with Risdahl Builders and $3,100.00 in gross income as an independent contractor. According to Lauterwasser's 2009 tax records, he

received $13,293 in wages from Risdahl Builders. For 2009, Lauterwasser also listed $20,423 in income from his subcontractor business, the same amount he was paid by Stark. Lauterwasser also admitted in his testimony that on a 2009 tax schedule he deducted $5,734 for advertising from the income he received from Stark, but that he did not actually do any advertising.

The commissioner also found that on the day of his injury, September 18, 2009, Lauterwasser "made numerous statements that contradict his assertion that he is an employee of Stark." Lauterwasser indicated on hospital forms that he was an employee of Risdahl Builders and that his saw accident was not a work injury. Stark testified he overheard Lauterwasser tell hospital staff he was self-employed and uninsured.

The district court did not express any dissatisfaction with any of these factual findings. The only determination by the commissioner challenged in the judicial review was his finding "the parties and witnesses intended to work for one another as subcontractors with the intent to circumvent the workers compensation laws." The district court stated: "[T]he Commissioner's determination that the parties' intent should not be considered because they intended to evade workers compensation law is not supported by any evidence in the record."

We do not share the district court's concern on this point. Initially, the record included testimony from Roger Nelson that it was common in the Linn County area for construction companies to pay subcontractors more than employees because they did not have to "pick up their insurance." That

testimony could raise a fair inference that the work relationships were structured to maximize the amount of take-home pay and not to reflect the true balance of responsibilities.

But more critically, we are not required to reverse the commissioner's ultimate ruling that Lauterwasser was an employee simply because the record lacks substantial evidence for one determination regarding the parties' evasive intent. "The substantial evidence rule requires us to review the record *as a whole* to determine whether there is sufficient evidence to support the decision the commission made." *See Woodbury Cnty. v. Iowa Civil Rights Comm'n*, 335 N.W.2d 161, 164 (Iowa 1983). A single finding not supported by substantial evidence may be set aside. *Id.*

When we review the record in its entirety, we find substantial evidence to support the commissioner's conclusion that Lauterwasser carried his burden to show Stark exercised the kind of control over Lauterwasser's work assignments and conditions that reflect an employer-employee relationship. Because the right to control the work was obviously vested in Stark, we need not resort to assessing the parties' subjective intent. *See Nelson*, 146 N.W.2d at 265. But even if we were to give the same primacy to the parties' intention as the district court did in its ruling, we would not find their designation of the relationship as one of general contractor and subcontractor to be controlling. That designation was "so plainly and completely at odds with the undisputed facts" that we may disregard it, even without imputing an evasive intent to the parties. *See* 3 Larson, § 61.05, at 61-8.

### C. Application Of The Law To The Facts

Finally, we review the commissioner's ultimate conclusion to determine if his application of law to facts is "irrational, illogical, or wholly unjustifiable." *See* Iowa Code § 17A.19(10)(m); *Neal*, 814 N.W.2d at 526.

As we have said, it was Lauterwasser's burden to establish the existence of an employer-employee relationship at the time he was injured. *See D & C Express, Inc. v. Sperry*, 450 N.W.2d 842, 844 (Iowa 1990). The commissioner cited the accepted factors for determining if an employment relationship existed. *See Nelson*, 146 N.W.2d at 265 (listing considerations as (1) the right of selection (2) responsibility for wages, (3) right to fire, (4) right to control the work, and (5) identity of the employer as authority in charge of work or for whose benefit it is performed). Applying those factors to the specific circumstances, the commissioner concluded Lauterwasser was an at-will employee of Stark—with Stark having the right of selection as to the employment status and relationship, full responsibility for the payment of wages, the right to discharge Lauterwasser at any time, sole control of the work, and Stark was the sole recipient of any profit from the contracts. The commissioner also properly applied the independent contractor factors. The commissioner ultimately decided: "[Lauterwasser] worked in a manner that all other hourly, at-will employees work in the competitive labor market." The commissioner disregarded the intention of the parties to form a general and subcontractor relationship, surmising it was done to evade the workers' compensation act and other laws.

The district court's overreliance on the parties' subjective intent pushed it to a different conclusion: "This lack of evidence [that the parties' intent should not be considered] leads the court to conclude that the Commissioner's conclusion was illogical."

Under our deferential standard of review, we cannot uphold the district court's reversal. *See Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 841 (Iowa 2013) (deferring to board's application of law to fact where it was not "irrational, illogical or wholly unjustifiable"). Recognizing the workers' compensation commission's expertise in this area, the legislature vested that agency, not the courts, with the primary jurisdiction for applying the legal tests for employer-employee relationships. *See Larson Mfg. Co.*, 763 N.W.2d at 850. In this case, the commissioner exercised that jurisdiction in a rational, logical, and justifiable manner. Accordingly, we reverse the district court's ruling and remand for consideration of the remaining challenges to the commissioner's award.

**REVERSED AND REMANDED.**